# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3554

_____

Michael Martinez; Eric Deeken,     *
           *
     Plaintiffs- Appellees,     *
           *   Appeal from the United States
     v.                    *   District Court for the
           *   Eastern District of Missouri.
City of St. Louis,           *
           *
     Defendant - Appellant,     *
           *

_____

Submitted:  April 17, 2008
Filed:  August 26, 2008

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON and MELLOY, Circuit Judges.

_____

LOKEN, Chief Judge.

In 1976, a lawsuit brought by the United States and by the Firefighters Institute for Racial Equality (FIRE) alleging racially discriminatory hiring and promotion by the St. Louis Fire Department (SLFD) was resolved by entry of a complex consent decree providing, in relevant part, that the City would hire qualified black applicants "for least fifty percent (50%) of the vacancies for the entry level of Firefighter personnel." United States v. City of St. Louis, 418 F. Supp. 383, 384 (E.D. Mo. 1976), aff'd in part & rev'd in part on other grounds, FIRE v. City of St. Louis, 549 F.2d 506 (8th Cir.), cert. denied, 434 U.S. 819 (1977).  The decree was still in effect in 2001, when Michael Martinez and Eric Deeken, unsuccessful white applicants for

entry level firefighter positions, commenced separate actions (later consolidated), alleging they were victims of unlawful reverse racial discrimination during the SLFD's 1998 and 2001 hiring processes in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.*, 42 U.S.C. §§ 1981 and 1983, the Equal Protection Clause, and the decree. The City answered that its hiring actions complied with the consent decree.

In November 2003, the district court ruled that the decree was constitutional when entered but dissolved the decree because its stated goal of racial parity had been achieved by June 2002 at the latest. Martinez v. City of St. Louis, 327 F. Supp. 2d 1002, 1005-8 & n.3, 1011 (E.D. Mo. 2003) (Martinez I). In February 2005, the court granted plaintiffs summary judgment on liability issues and ordered a jury trial on the issue of damages. Martinez v. City of St. Louis, 470 F. Supp. 2d 1013, 1016, 1024-25 (E.D. Mo. 2005) (Martinez II). Two months later, the court ordered Deeken included in the next class of probationary firefighters. After trial, the jury awarded Martinez $5,000, primarily for emotional distress, and Deeken $157,989 for lost wages, benefits, and other damages. The district court then awarded Martinez instatement retroactive to March 2000, an additional $40,061.09 for retroactive lost wages, and related lump sum payments. It deferred the award of attorneys' fees. The City appeals. At oral argument, the City clarified that it is not appealing dissolution of the consent decree; that part of the district court's judgment is therefore affirmed. Rather, the City argues the district court erred in awarding retroactive damages and related relief. We agree and reverse.

When the consent decree was entered in 1976, blacks comprised eleven percent of SLFD personnel, compared to forty percent of the City's general population. See Martinez I, 327 F. Supp. 2d at 1006 n.2. The decree sought to remedy this racial imbalance by controlling entry level hiring. Paragraph 1 of the decree provided:

> The goal shall be to achieve a racial composition of Firefighters in the St. Louis Fire Department which is comparable to the civilian labor force for

the City of St. Louis subject to the availability of qualified applicants. In order to fulfill this goal and subject to the availability of qualified black applicants, [the City] shall adopt and seek to achieve a goal of hiring blacks for at least fifty percent (50%) of the vacancies for the entry level of Firefighter personnel in the Fire Department *for each year during the life of this decree*.

418 F. Supp. at 384 (emphasis added). The life of the decree was addressed in paragraph 9:

At any time after five (5) years from the date of entry of this . . . decree, [the City] may move this Court on forty-five (45) days notice to plaintiffs for dissolution . . . and upon [a] showing that the goals of this decree in providing equal employment opportunities have been fully achieved, the decree may be dissolved. Id. at 386.

In 1990, the United States, an original plaintiff, moved for modification of the decree to eliminate the fifty percent "racially numerical hiring" requirement. The United States noted that 49% of the entry level firefighters and 32% of the entire department were now black, whereas blacks comprised only 15.7% of the civilian labor force in "the St. Louis metropolitan area," and a new City ordinance allowed the hiring of non-residents provided they moved to the City within 120 days.[1] The City and FIRE opposed this motion, and the district court denied it, on the ground that the decree's hiring goal was based explicitly on the civilian labor force in the City, there remained a disparity of 10% between black firefighters and blacks in the City's labor force, and therefore the United States failed to meet "the burden of demonstrating changed circumstances showing the hiring goal to be unnecessary because achieved." United States v. City of St. Louis, No. 74-200C(1) at 5 (E.D. Mo. Oct. 1, 1990).

----

[1]A residency requirement can make the city itself the proper labor market. See Quirin v. City of Pittsburgh, 801 F.Supp. 1486, 1488-89 (W.D. Pa. 1992).

Martinez, who was already a City employee, passed written and physical firefighter examinations in 1998. He ranked sixty-seventh on a promotional list prepared to comply with an ordinance giving preference to City employees. In 1999 SLFD hired eight black candidates from the promotional list with lower scores than Martinez; in 2000 he ranked just behind an individual hired. A March 2006 stipulation recited that, but for the City's 50% hiring practice under the decree, Martinez "would have been certified to the Fire Chief to be considered for possible appointment to the position of Probationary Fire Private" in both September 1999 and March 2000. Martinez was finally hired as an entry level firefighter in March 2005.

Deeken was not a City employee when he applied for an entry level firefighter position, so he was placed on a secondary "open list." SLFD hired fifteen black candidates from the open list in September 1999, when Deeken was the highest ranked candidate on that list. In December 1999, thirty-four lower-ranked black applicants were certified from the open list; thirty-one were hired in 2000 and 2001. See Martinez II, 470 F. Supp. 2d at 1019-20. The March 2006 stipulation recited that Deeken would have been certified to the Fire Chief for possible appointment in March 2000 but for the City's 50% hiring policy, and that he failed the Probationary Fire Private exam in 2003. The court ordered that Deeken be certified in April 2005; he was appointed a probationary firefighter in August of that year.

**A.** When the City asserted that its hiring actions complied with the consent decree, Martinez and Deeken moved to dissolve the decree, arguing it was unconstitutional *ab initio*, or retroactively to December 31, 1993. The United States, added as a defendant by Martinez and Deeken, opposed dissolution but moved to modify the decree by replacing its 50% hiring ratio with a selection procedure compliant with Title VII (consistent with the position of the United States in 1990). The district court reviewed the constitutionality of the consent decree when entered in 1976 under more stringent standards of strict scrutiny adopted in later cases such as Adarand Constructors, Inc. v. Pena, 515 U.S. 200 (1995), and Wygant v. Jackson Board of Education, 476 U.S. 267 (1986). In undertaking this review, the court relied

on <u>Donaghy v. City of Omaha</u>, 933 F.2d 1448, 1456-58 (8th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1059 (1992), which in turn relied on <u>Martin v. Wilks</u>, 490 U.S. 755 (1989). In <u>Martin</u>, the Supreme Court held that a consent decree imposing affirmative action obligations may be "collaterally attacked" by a non-party who is adversely affected by the decree's mandates.

We have considerable doubt about the district court's ruling. In 1976, the decree was appealed by the City *and* by "Intervenors who represent a class of nonblack employees and candidates for employment in the fire department." <u>FIRE</u>, 549 F.2d at 508. The entry level provisions here at issue were not challenged on appeal and were affirmed. If those Intervenors adequately represented the same interests, Martinez and Deeken are bound by the law of the case we established on appeal. <u>See</u> <u>Hansberry v. Lee</u>, 311 U.S. 32, 41-43 (1940), cited in <u>Martin</u>, 490 U.S. at 762 n.2, and in <u>Taylor v. Sturgell</u>, 128 S. Ct. 2161, 2176 (2008). But in any event, any error by the district court in taking up this question is harmless, because the court concluded that the decree was constitutionally valid when entered. <u>Martinez I</u>, 327 F. Supp. 2d at 1005-07.

**B.** The significance of the district court's ruling that the decree was constitutionally valid when entered cannot be overstated. The decree mandated a 50% hiring policy "during the life of this decree." Thus, for the period prior to dissolution of the decree in November 2003, the district court has granted substantial monetary and equitable relief for actions taken by the City *to comply with a valid court order*. Martinez and Deeken have not cited, and we have not found, any case granting such relief. <u>Martin</u> simply remanded to permit plaintiffs to challenge the decree's validity. We upheld the same type of challenge in <u>Donaghy</u>, but we agreed the decree was valid and affirmed the grant of a directed verdict dismissing reverse discrimination claims. In <u>Police Ass'n of New Orleans v. City of New Orleans</u>, 100 F.3d 1159, 1169 (5th Cir. 1996), cited by Martinez, the court granted relief for *violations* of the decree and the Equal Protection Clause. The court noted, "The Decree cannot be used to justify actions *aside from those mandated by its own terms*." (Emphasis added.) Plaintiffs

and the district court rely most heavily on Quinn v. City of Boston, 325 F.3d 18 (1st Cir. 2003). But in Quinn, the consent decree provided that the Boston Fire Department remained subject to the decree only until "a general benchmark established by the decree" was achieved. Id. at 24. In other words, the decree in Quinn terminated automatically when its objectives were achieved. After that, continued adherence was no longer a defense to reverse discrimination claims challenging the employer's subsequent employment decisions. Here, on the other hand, the decree ordered the City to comply with the 50% hiring requirement "during the life of this decree," that is, until the decree was dissolved *by the court*.

In these circumstances, we conclude that the district court erred in granting monetary and equitable relief for the City's hiring decisions before dissolution of the decree. Had the City not complied with the decree, for example, had it violated the 50% requirement by hiring Martinez and Deeken, it would have faced a lawsuit by adversely affected black applicants (and by FIRE) and possibly contempt sanctions by the court. See Mahers v. Hedgepeth, 32 F.3d 1273 (8th Cir. 1994). Martinez and Deeken properly sued to challenge the decree's continuing validity, and the district court properly invoked its jurisdiction to modify or dissolve the decree. See Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367 (1992); McDonald v. Carnahan, 109 F.3d 1319 (8th Cir.) (1997). But compliance with this valid Title VII remedial consent decree until it was dissolved, like compliance with a bona fide affirmative action plan, is a complete defense to the pre-dissolution claims for damages and other individualized relief. See Brotherhood of Midwest Guardians, Inc. v. City of Omaha, 9 F.3d 677, 679 (8th Cir.) (1993); Setser v. Novack Inv. Co., 657 F.2d 962, 969-70 (8th Cir.) (en banc), cert. denied, 454 U.S. 1064 (1981); 29 C.F.R. § 1608.8(b) (the EEOC "interprets title VII to mean that actions taken pursuant to the direction of a Court Order cannot give rise to liability").

Martinez and Deeken argue, and the district court agreed, that pre-dissolution relief is warranted because the City knew or should have known that the relevant labor market had changed (as unsuccessfully urged by the United States in 1990), which

imposed an obligation on the City to move for amendment or dissolution of the decree when parity was achieved "sometime in 1998." Martinez II, 470 F. Supp. 2d at 1023-24. This is a thorny issue as to liability,[2] but the theory will not support the award of damages and equitable relief to Martinez and Deeken. Had the City made such a motion with notice to the original plaintiffs, as paragraph 9 required, FIRE would have opposed dissolution, as it did in 1990, and the United States would likely have argued for modification, rather than dissolution, as it did in 1990 and in these cases. Thus, the district court would have faced the same complex and difficult issues it faced in these cases. Whether the court would have dissolved the decree sooner if the City had filed such a motion, and if so when Martinez and Deeken would have reaped the benefits of dissolution, are wholly speculative and conjectural. See United States v. City of Miami, 2 F.3d 1497, 1508-9 (11th Cir. 1993).

For these reasons, the award of individualized relief to Martinez and Deeken for the period prior to the November 5, 2003, dissolution is reversed.

**C.** Dissolution of the consent decree prospectively eliminated an affirmative defense to the reverse discrimination claims asserted by Martinez and Deeken. But dissolution alone does not establish that the City's post-dissolution hiring decisions were the product of intentional race discrimination or adversely affected Martinez and Deeken. These plaintiffs must still prove each element of their reverse discrimination claims, and the damages caused by any post-dissolution hiring decision that was unlawfully discriminatory. None of these issues has been addressed by the district court, and therefore the cases must be remanded for further proceedings on issues of liability as well as remedy. At this point, Martinez and Deeken have partially

---

[2]The City argues that the plain text of the consent decree permitted but did not obligate the City to move for dissolution when parity was achieved. On the other hand, as race-based affirmative action plans and decrees are viewed with disfavor, it makes sense to impose some responsibility on a governmental defendant to actively monitor whether a decree to which it is subject has served its remedial purpose.

prevailed (the consent decree has been dissolved), they have unsuccessfully urged an award of retroactive damages and related relief, and their claims for additional post-dissolution relief remain unresolved. Therefore, an award of attorneys' fees would be premature. Any future attorneys' fee award must be reduced on account of limited success. <u>See</u> <u>Farrar v. Hobby</u>, 506 U.S.103, 114-16 (1992).

The amended judgment of the district court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion. We award the City its reasonable costs and attorneys' fees for the appeal.

_____