[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-14729

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 17, 2009
THOMAS K. KAHN
CLERK

D.C. Docket No. 03-00199-CV-2-D-N

TIMOTHY D. POPE,

Plaintiff-Appellant,

versus

STATE OF ALABAMA,
ALABAMA DEPARTMENT OF CORRECTIONS,
ALABAMA STATE PERSONNEL DEPARTMENT,
JACKIE B. GRAHAM,
in her official capacity as the Director
of the Alabama State Personnel Department and
successor to Thomas G. Flowers,
RICHARD F. ALLEN,
in his official capacity as the Commissioner
of the Alabama Department of Corrections and
successor to Michael Haley and Donal Campell,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(July 17, 2009)

Before DUBINA, Chief Judge, EDMONDSON and HILL, Circuit Judges.

PER CURIAM:

This is an appeal from the grant of a motion for summary judgment in favor of the State of Alabama, the Alabama Department of Corrections (ADOC), the Alabama State Personnel Department (ASPD), ASPD's director, and ADOC's commissioner (collectively, the State), on claims brought by Timothy Pope (Pope) pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (Title VII), and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as enforced by 42 U.S.C. § 1983 (Section 1983). Based upon the following, we affirm the judgment of the district court.[1]

I.

In August 2002, Pope, an ADOC white male employee working at the Bibb Correctional Facility in Brent, Alabama, as Correctional Officer I, was notified that his name had been placed on a certificate of eligible candidates for promotion to Correctional Officer II. In September 2002, he interviewed for the position, was offered and accepted the position.

However, final authority for the decision to promote rested up the

---

[1] The procedural and factual history of this case is thoroughly set forth in the twenty-nine (29) page memorandum opinion and order of the district court dated July 24, 2008; therefore we cite background only relevant to this appeal.

administrative pipeline with the ASPD.  In its due diligence, the ASPD determined

that a higher ranking African-American female's name was also listed on the

certificate of eligibility.  Pope's ADOC offer to promote was rescinded by the

ASPD as forbidden by the "no-bypass" rule mandated in 1970 by court order,

*United States v. Frazer*, 317 F. Supp. 1079, 1091 (M.D. Ala. 1970), then in full

force and effect.[2]

Pope filed suit against the State under Title VII and Section 1983 in 2003.

This appeal results.[3]

## II.

The *Frazer* no-bypass rule prohibited the State from overlooking a higher-

ranked African-American applicant in favor of a lower-ranked white applicant on

a certificate of eligibles, unless the African-American was unqualified or unfit for

the position.  *See Frazer*, 317 F. Supp. at 1091.  This long-standing litigation and

the rules resulting therefrom remained in effect for thirty-five years, from 1970,

until temporarily suspended in May 2005, *United States v. Flowers*, 372 F.

---

[2] The record is patently clear that, in 1970, the State was engaged in a widespread, systemically biased pattern and practice of discriminating against African-Americans in its hiring and promotional practices.  *Frazer* was a comprehensive remedial order, entered for the purpose of correcting these practices.  The judicially imposed no-bypass rule was but one of its many provisions.

[3] The record indicates that Pope was promoted in 2004.

Supp.2d 1319 (M.D. Ala. 2005), and finally terminated in June 2006. *United States v. Flowers*, 444 F. Supp.2d 1192 (M.D. Ala. 2006).

III.

Citing *Martin v. Wilks*, 109 S.Ct. 2180 (1989), Pope argues that he is not bound by the court decree of *Frazer* because he was not named as an original party to the litigation.[4] Pope also contends that his promotion was clearly rescinded because of his race and that the State falsely claims immunity under an ancient rule to which he was not joined as a party. It is thereby unconstitutionally trying to shield itself from any claims by Pope for race discrimination.

Pope claims that *Frazer's* no-bypass rule is unconstitutional on its face, and, that the State, in 2002, should have either sought relief or a waiver on his behalf from the 1970 order.[5] Pope contends that the record shows that in the Spring of 2002, the State admits that the no-bypass rule was unconstitutional on its face, and could no longer pass muster under a strict scrutiny analysis. *See City of Richmond*

---

[4] Pope argues throughout that the Supreme Court, in *Martin v. Wilks*, 109 S.Ct.2180 (1989), stands for the proposition that, a non-party to an adjudicated judgment or a consent decree, has the right to attack a race-based program as unconstitutional. *See also United States v. Jefferson County*, 720 F.2d 1511, 1518 n.16 (11th Cir. 1983) (where there is no distinction between a consent decree and a litigated judgment for purposes of *res judicata* or collateral estoppel).

[5] The record indicates that Pope was ultimately successful in challenging the validity of the no-bypass rule in 2005, three years after his promotion was rescinded in 2002, and one year after he was actually promoted in 2004.

*v. J. A. Croson Co.*, 109 S.Ct. 706 (1989); *Wygant v. Jackson Bd. of Educ.*, 106 S.Ct. 1842 (1986). Pope further contends that when a non-African-American is not joined as a party in a race discrimination case, he is not bound by its judgment. *See Ensley Branch N.A.A.C.P. v. Seibels*, 31 F.3d 1548 (11th Cir. 1994).

IV.

The State cites *Martinez v. City of St. Louis*, 539 F.3d 857 (8th Cir. 2008), for the proposition that compliance with a consent decree in order to avoid contempt is a complete defense to an equal protection claim. It also cites *Citizens Concerned About Our Children v. School Bd. of Broward County, Fla.*, 193 F.3d 1285 (11th Cir. 1999), another equal protection case where compliance is a complete defense, as a violation would be punishable by contempt. *Id.* at 1292 ("A potential for contempt alone could provide the [defendant] a compelling interest to observe racial policies . . . [a]ny rule that punished the [defendant] for failing to *disobey* the court would not comport with the sanctity of an unchallenged court order") (alteration in original) (citations omitted).

"Avoiding contempt and respecting the court that entered the [court order or] the consent decree suffice to make obedience a compelling interest." *Citizens Concerned*, 193 F.3d at 1292. "A contravening compelling interest justifies an explicitly racial policy only when the policy is narrowly tailored to serve that

5

interest." *Id*. at 1293.[6]

## V.

At the time Pope's promotional offer was rescinded in 2002, the State was clearly bound by *Frazer's* court order, valid and in effect since 1970. Had, in 2002, the State violated the no-bypass rule, before the rule was temporarily suspended in 2005, or permanently terminated in 2006, it would have been subject to contempt.[7]

We conclude that, as the no-bypass rule was in effect in 2002, the State was required, and fully justified, in abiding by its enforcement. Indeed it was in the compelling interest of the State to avoid a violation punishable by contempt and to respect the sanctity of the *Frazer* court. Indeed, the State was required to obey the order until it was either reversed or modified. *See GTE Sylvania, Inc. v. Consumers Union of the United States, Inc.*, 100 S.Ct. 1194 (1980).

---

[6] The State contends that Pope can not rely upon *Wilks* as it stands merely for the proposition that a non-party to an adjudicated court order or a consent decree has the procedural right to challenge it, but that non-party must still prove the substantive merits of his or her Title VII and Section 1983 claims. We agree.

[7] In May 2002, in order to determine whether the no-bypass rule was still necessary, the State hired statistical experts to examine the racial composition of the Alabama workforce as well as the racial patterns of recent selections in the workforce. The purpose was to allow the State to garner hard evidence with which to support a motion to terminate the rule. The State suspected, yet had no actual evidence in 2002, that sufficient numbers of African-American persons had been promoted to high-level positions throughout Alabama and that the rule no longer fit the circumstances existing in the State.

6

## VI.

We have thoroughly considered the record in this appeal, the briefs, and the arguments of counsel put forth at oral argument. We find no merit to Pope's Title VII or Section 1983 claims. Although the no-bypass rule was eventually found to be unconstitutional and terminated, as, in essence, the rule had "done its job," Pope cannot retroactively bootstrap this 2006 finding back to the past, and hold the State liable for actions it made in 2002, in rescinding his promotion. The State can not be punished for *failing to disobey* a valid court order. *See Citizens Concerned*, 193 F.3d at 1292.

We affirm the judgment of the district court granting summary judgment in favor of the State.

AFFIRMED.