# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-3883

_____

City of Duluth

*Plaintiff - Appellee*

v.

Fond Du Lac Band of Lake Superior Chippewa

*Defendant - Appellant*

_____

No. 11-3884

_____

City of Duluth

*Plaintiff - Appellant*

v.

Fond Du Lac Band of Lake Superior Chippewa

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 13, 2012
Filed: January 14, 2013

_____

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

The central question raised in this appeal is whether certain aspects of the district court's 1994 consent decree[1] involving the City of Duluth and the Fond du Lac Band of Lake Superior Chippewa should be dissolved. After the National Indian Gaming Commission (NIGC) decided that the parties' 1994 agreement was incompatible with federal law, the Band moved for dissolution of the consent decree. The City opposed the motion, and the district court granted it in part and denied it in part. Both parties appeal. We affirm in part, reverse in part, and remand.

I.

The City of Duluth and the Fond du Lac Indian Band entered into an agreement in 1986 to establish a Fond-du-Luth gambling casino in the city. Two years later in 1988 Congress passed the Indian Gaming Regulatory Act (IGRA) to oversee the establishment and regulation of Indian casinos. 25 U.S.C. § 2701 et seq. One of the provisions in IGRA requires that an Indian tribe have the "sole proprietary interest" in any Indian gaming activity authorized by the act, as well as the exclusive control and responsibility for it. 25 U.S.C. § 2710(b)(2)(A). After the question arose whether the parties' 1986 agreement was in compliance with these aspects of IGRA, the City and the Band began to renegotiate it at a time when the full implications of the act were still unclear.

_____

[1] The parties and the district court refer to the 1994 agreement both as an order and as a decree; for ease of reference "decree" is generally used here.

In 1990 the Band sought to enjoin enforcement of the 1986 agreement as being in violation of IGRA. The district court[2] referred the question of whether that agreement violated IGRA to the newly created National Indian Gaming Commission (NIGC). The NIGC, an independent agency within the Department of the Interior, had been vested by Congress with the responsibility for interpreting and enforcing IGRA. 25 U.S.C. § 2706. The district court was concerned that a declaratory judgment could "confuse and unsettle" the relationship between the parties if it were not based on findings by the NIGC as to the legality of the 1986 agreement. The Band's request for an injunction was therefore dismissed without prejudice pending a report and recommendation from the NIGC. Fond du Lac Band of Lake Superior Chippewa Indians v. City of Duluth, Civ. No. 5-89-0163 (D. Minn. Dec. 26, 1990) ("Fond du Lac I").

Although Congress had created the NIGC in 1988, its ability to act was delayed by the need to appoint commissioners. The first was appointed in 1990, but the third commissioner was not sworn in until 1991. Further delay was caused by the need to organize office space and orient staff. The NIGC was therefore not able to promulgate regulations or to initiate enforcement actions for quite some time after its creation. See Joseph M. Kelly, Indian Gaming Law, 43 Drake L. Rev. 501, 514–15 (1995).

The NIGC determined on September 24, 1993 that the original agreement between the City and the Band violated IGRA, and it issued a notice of violation letter. The NIGC decided not to initiate an enforcement action, however, but to give the parties an opportunity to negotiate a new contract. In 1994 the City and the Band reached a new agreement related to the casino which they then presented to the district court for its oversight and approval.

---

[2] The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota, presiding.

This agreement between the parties provided that the Band was the sole owner of the casino and that it would pay the City 19% of the casino's gross revenues for the period from 1994 to 2011. The rental rate for a second term from 2011 to 2036 was to be negotiated at a later date. Since the district court had earlier indicated that the NIGC should rule on the legality of any agreement between the parties, the 1994 agreement was made contingent on a determination by the NIGC that it did not violate IGRA. The parties submitted their agreement to the NIGC for its approval on June 13, 1994. Three days later the NIGC forwarded to the district court and the parties its report and recommendation which approved the agreement as being consistent with the sole proprietary interest rule established by IGRA. The district court issued an order on June 22, 1994 incorporating the detailed stipulation of the parties into a consent decree which also provided that the NIGC had concluded that "these agreements are in conformance with" IGRA. The court retained jurisdiction over the enforcement of the agreement.

Consistent with the terms of this consent decree, the Band paid the City approximately $75 million in rent for the period from 1994 until 2009. The Band then ceased making payments on the ground that it had actually been paying the City more than 19% of the casino's gross revenues because certain expenses should have been considered as offsets against revenue. The City responded by suing for breach of contract, and the Band later filed a counterclaim alleging that the consent decree was not consistent with IGRA and should therefore be dissolved.

The district court[3] decided that the Band's argument about the legality of the consent decree was barred by res judicata since the decree had been approved by the court at its inception and formalized in a judgment. City of Duluth v. Fond du Lac Band of Lake Superior Chippewa, 708 F. Supp. 2d 890, 896–97 (D. Minn. 2010) ("Fond du Lac II"). The district court also decided to schedule a trial on the question

---

[3] The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota, presiding.

-4-

of whether the Band had overpaid the City during the 1994–2011 period. Id. at 902–03. The court further observed that the consent decree had indicated that the payment plan for the 2011–2036 extension period would be decided by arbitration. Id. at 903. After another round of arguments by the parties, the district court[4] ordered the parties to submit the issues related to the extension period to arbitration. City of Duluth v. Fond du Lac Band of Lake Superior Chippewa, 2011 WL 1832786, at *1 (D. Minn. May 13, 2011) ("Fond du Lac III").

Meanwhile the Band had raised before the NIGC questions about the legality of the terms agreed on by the parties and then incorporated into the 1994 consent decree. Under IGRA, the NIGC was authorized to issue a notice of violation (NOV) "to any person for violations of any provision" of the act. 25 C.F.R. § 573.3(a). Shortly after the parties began the arbitration, the NIGC issued a NOV on July 12, 2011. In this violation notice the NIGC announced its determination that provisions agreed on in the 1994 consent decree actually violated IGRA's "sole proprietary interest" rule. It ordered the Band to cease performance under the consent decree or face sanctions, including possible closure of the Duluth casino. See 25 C.F.R. §§ 573.4, 575.4.

Following this action by the NIGC, the Band moved in the district court under Fed. R. Civ. Pro. 60(b) for dissolution of the consent decree. Citing the NIGC's determination that the consent decree was in violation of IGRA, the Band asked for prospective relief from any further obligation to comply with the decree. It also requested retrospective relief in the form of repayment of the rent it had paid to the City since 1994 and also asked that it be released from having to pay rent it had withheld from the City for the period 2009–2011. The City opposed the Band's motion.

---

[4] The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota, presiding.

The district court decided in an order dated November 21, 2011 that the Band "be relieved of any further compliance with its obligations under the 1994 Agreements." The court also discussed "retroactive relief," deciding that the Band could not recover its previously paid rent, and ruled that it must pay the City rent it had withheld from 2009 to 2011. Finally, a trial would be scheduled later on the issue of disputed "contra-revenues"—that is, whether the Band may recover any overpayments to the City by recognizing certain expenses as offsets against revenues.

Both parties appeal. The City appeals the prospective dissolution of the consent decree related to the 2011–2036 term. It argues that the NIGC's notice of violation did not make continued enforcement of the consent decree inequitable. The Band appeals the ruling compelling it to pay rent it had withheld from 2009 to 2011, arguing that it is entitled to receive retrospective relief under Rule 60(b)(6) from making payments required by an invalidated decree. The Band does not appeal the district court's ruling that it cannot recover the rent already paid to the City for the period from 1994 to 2009. The scheduled trial on the issue of possible overpayments is not a subject of this appeal.

II.

Rule 60(b) of the Federal Rules of Civil Procedure allows a district court "[o]n motion and just terms" to relieve a party from the obligations of a final judgment, order, or proceeding. Fed. R. Civ. Pro. 60(b). The rule gives six reasons which may justify relief, two of which are cited here by the Band. Relief may be justified if prospective application of a judgment or order "is no longer equitable," Fed. R. Civ. Pro. 60(b)(5), or for "any other reason that justifies relief." Fed. R. Civ. Pro. 60(b)(6).

A district court's Rule 60(b) decision to grant relief is reviewed for abuse of discretion. Atkinson v. Prudential Prop. Co., 43 F.3d 367, 371 (8th Cir. 1994). A court abuses its discretion when a relevant factor that should have been given

significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; or when all proper factors and no improper ones are considered, but the court commits a clear error of judgment in weighing those factors. Thatcher v. Hanover Ins. Group, Inc., 569 F.3d 1212, 1213 (8th Cir. 2011). An error of law is necessarily an abuse of discretion. Menz v. New Holland N. Am., Inc., 440 F.3d 1002, 1005–06 (8th Cir. 2006).

The Supreme Court has explained that a consent decree can be altered "if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed." Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 380 (1992). The "party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree." Id. at 383. A "consent decree must of course be modified," however, if "one or more of the obligations placed upon the parties has become impermissible under federal law." Id. at 388.

Here, the district court decided that the NIGC's 2011 determination that terms of the consent decree violated IGRA was a change in law that required modifcation of the decree to eliminate its prospective application from 2011 to 2036. It is within an agency's authority to define terms by adjudicative decision instead of through formal rulemaking, see NLRB v. J. Weingarten, Inc., 420 U.S. 251, 265 (1975), and the NIGC thus had the power to issue its 2011 determination. Its 2011 decision was directly contrary to the NIGC's original position embodied in the consent decree, that was that the 1994 agreement between the City and the Band complied with IGRA.

The City argues that the NIGC's determination that the content of the consent agreement violates IGRA does not make its continued enforcement inequitable. The City criticizes the process by which the NIGC came to its 2011 decision, implying that that decision was the result of inappropriate political pressure. While the City may question the validity of the NIGC's current position, such challenges are properly

made under the Administrative Procedure Act (APA). 5 U.S.C. § 702. The NIGC is not a party to this litigation, and the City has not made a showing that the review process established by Congress in the APA might be circumvented here. See 5 U.S.C. § 703.

Another argument by the City is that the NIGC's 2011 decision was not a "change in circumstances" of law or fact which would permit modification under Rule 60(b)(5). See Rufo. 502 U.S. at 383 (placing the burden on party seeking modification of a consent decree to establish a "significant change in circumstances" that would warrant revising the decree). The City argues that the NIGC's 2011 determination was not a change in law because it did not grow out of a court decision or the enactment or amendment of a statute and that no other circumstances have altered the relationship between the City and the Band with respect to the casino. In making this argument, the City points to language in Rufo where the Court was discussing modification of a consent decree due to a change in "statutory or decisional law." Rufo, 502 U.S. at 388 ("[M]odification of a consent decree may be warranted when the statutory or decisional law has changed to make legal what the decree was designed to prevent."). The Court did not indicate in Rufo that modifications under Rule 60(b)(5) are only possible where there have been changes in a statute or judicial precedent, however.

We agree with the district court that a binding adjudication by a federal agency, which has been tasked with interpreting and enforcing a statute enacted by Congress, represents a change in law for the purposes of Rule 60(b). The City cites no cases holding to the contrary. Indian gaming is an area subject to intense federal oversight, and the City does not explain how the government's regulatory interest would be protected if the Duluth casino were somehow exempted from the NIGC's most recent interpretation of the sole proprietary interest rule. Even if Rufo's reference to "statutory or decisional law" were read to be so narrow as to exclude an agency decision, the Court's quoted sentence applied only to cases where the change in law

"makes legal what the decree was designed to prevent." Rufo, 502 U.S. at 388. The case before our court deals with an opposite scenario, for here the change made illegal what was previously legal.

In the situation here, the NIGC's change in the law governing Indian gaming made illegal what the earlier consent decree was designed to enforce. In its discussion of legal change, the Court categorically stated in Rufo that a "consent decree must . . . be modified if . . . one or more of the obligations placed upon the parties has become impermissible under federal law." Id. The 2011 decision by the NIGC, the agency authorized by Congress to interpret and enforce IGRA, ruled that the 1994 arrangement between the City and the Band violated IGRA. That determination provides ample support for the district court's decision to grant prospective relief from continued enforcement of the 1994 consent decree into the 2011 to 2036 period since continued execution of the agreement would be "no longer equitable." Fed. R. Civ. Pro. 60(b)(5); Rufo, 502 U.S. at 380.

## III.

The Band argues that it should not be forced to pay the City rent it withheld from 2009 to 2011. It contends that requiring it to pay that rent originally due under the 1994 agreement would place it in the same conflict with the NIGC's 2011 decision as being required to pay prospective rent. Since Rule 60(b)(5) does not allow for retrospective relief, the Band makes its claim for the years 2009–2011 under Rule 60(b)(6). The latter rule enables relief from a prior order for "any other reason that justifies relief." Fed. R. Civ. Pro. 60(b)(6). We review the district court's decision for abuse of discretion. Atkinson, 43 F.3d at 371.

The district court denied the Band retrospective relief. It reasoned that since the grounds for the Band's claims for relief under Rule 60(b)(5) and (b)(6) were similar, retrospective relief could undermine the limitation to prospective relief in

Rule 60(b)(5). The district court reasoned that because Rule 60(b)(5) covers a situation where there has been a change in the law permitting prospective relief, it would be inconsistent to permit a party also to obtain retrospective relief under Rule 60(b)(6). The Band points out, however, that nothing in Rule 60(b) indicates that relief cannot properly be sought under distinct parts of the rule where appropriate. By improperly restricting the rule and foreclosing the possibility of retrospective relief, the Band argues that the court abused its discretion. See Menz, 440 F.3d at 1005–06.

We agree that Rule 60(b) does not categorically prevent claims from being raised for prospective relief under 60(b)(5) as well as for retrospective relief under 60(b)(6). See Hess v. Cockrell, 281 F.3d 212, 215 (5th Cir. 2002). Rule 60(b) provides "grounds for relief from a final judgment" or order "on motion and just terms" for the reasons stated in sections 1 through 6, and (b)(6) broadly permits relief for "any other reason that justifies relief." Although a party may not obtain relief under Rule 60(b)(6) if it would be available under Rule 60(b)(5) or any other clause of Rule 60(b), Liljeberg v. Health Serv. Acquisition Corp., 486 U.S. 847, 863 (1988), Rule 60(b)(5) does not allow for retrospective relief so the Band's claim related to the rent withheld from 2009 to 2011 could not be sought under that part of the rule.

A change in governing law can represent so significant an alteration in circumstances as to justify both prospective and retrospective relief from the obligations of a court order. In In re Pacific Far East Lines, Inc., 889 F.2d 242 (9th Cir. 1989), for example, the court granted a Rule 60(b)(6) motion to refund monies paid to the government as part of bankruptcy proceedings. There, a bankrupt company had agreed to pay $776,000 to a government fund, and the bankruptcy court entered an order in 1983 authorizing the payment. Id. at 244. The following year Congress passed the Bankruptcy Amendments and Federal Judgeship Act of 1984, which placed a statutory maximum of $200,000 on such a payment. Pub. L. No. 98-353, 98 Stat. 333 (1984), §§ 381–82. Pacific Far East moved for a refund of

money it paid in excess of the new statutory maximum. The Ninth Circuit decided that because the new maximum "came as a complete surprise to all parties," the extraordinary circumstances requirement of Rule 60(b)(6) had been met. 889 F.2d at 250. Pacific Far East was thus awarded a refund under the rule. Id.

The purpose of Rule 60(b)(6) is to broaden the grounds for relief to encompass scenarios not covered by the preceding five subsections, including subsection (b)(5). See 11 Wright & Miller, Federal Practice and Procedure § 2864 (2d ed. 2011). To the extent the district court's decision in this case relied on an assumption that retrospective relief under Rule 60(b)(6) is categorically foreclosed for claims covered in part by Rule 60(b)(5), it abused its discretion. Here, the Band seeks to avoid the obligation to pay rent withheld from 2009 to 2011 which accrued under the 1994 agreement now held by the NIGC to violate IGRA.

To be sure, relief under rule 60(b)(6) remains "an extraordinary remedy" for "exceptional circumstances." In re Zimmerman, 869 F.2d 1126, 1128 (8th Cir. 1989). The district court also alluded to factors why retrospective relief might not be appropriate in this case. Both the Band and the City voluntarily agreed to the provisions incorporated in the 1994 decree. Moreover, this agreement was initially endorsed by the NIGC. While the NIGC had the power to change its position, it does not have the authority to punish a party for obeying a court order. See Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 227–28 (1995); Martinez v. City of St. Louis, 539 F.3d 857, 861 (8th Cir. 2008). These factors remain relevant in consideration of the Band's request for relief under Rule 60(b)(6).

There are also factors favoring relief to be considered. Congress vested in the NIGC authority for matters related to the regulation of Indian casinos, see 25 U.S.C. § 2706, in order to ensure that the primary beneficiaries of Indian gaming operations are to be the tribes themselves, see 25 U.S.C. §§ 2702(2). By the time the Band began withholding rent in 2009, the City was on notice that the NIGC's views on the

-11-

validity of the 1994 agreement might well have changed. That was because after its initial approval of that agreement, the NIGC issued several advisory letters pointing out that similar arrangements between other tribes and casinos had been found to violate the sole proprietary interest rule. See Fond du Lac II, 708 F. Supp. 2d at 899–900 (discussing other NOVs sent by the NIGC in analogous cases). Although these advisory opinions for other parties may not alone have been sufficient to demonstrate that the parties' consent decree violated IGRA, id. at 900–02, the NIGC now has conclusively made that determination. The intervening decisions by the NIGC likely were available and accessible to the parties, and they may well have relevance in ascertaining whether retrospective relief should be granted.

It is unclear what conclusion the district court would have reached without its mistaken belief that Rule 60(b)(6) was not available for consideration of potential retrospective relief. The district court abused its discretion by not examining all the relevant factors including whether the NOV issued by the NIGC on July 12, 2011, changing its earlier position and ordering the Band to cease performance under the consent decree, was an "exceptional" occurrence justifying 60(b)(6) relief. See Zimmerman, 869 F.2d at 1128. We thus reverse the district court's decision denying retrospective relief to the Band for its obligation to pay rent withheld from 2009 to 2011 and remand that question for the court's further consideration consistent with this opinion.

IV.

Accordingly, we affirm the ruling of the district court under Rule 60(b)(5) relieving the Band of prospective compliance with the 1994 consent decree, but reverse its denial of the Band's request for retrospective relief under Rule 60(b)(6) and remand that question for further proceedings consistent with this opinion.

_____