# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-3408

_____

City of Duluth

*Plaintiff - Appellee*

v.

Fond Du Lac Band of Lake Superior Chippewa

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 12, 2014
Filed: May 8, 2015

_____

Before MURPHY, MELLOY, and BENTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

The Fond du Luth Casino in downtown Duluth, Minnesota opened in 1986 as a joint venture between the City of Duluth and the Fond du Lac Band of Lake Superior Chippewa and is today a profitable tourist attraction owned and operated by the Band. Congress passed the Indian Gaming Regulatory Act ("IGRA") in 1988 which changed the legal framework underlying the development of American Indian

casinos such as the Fond du Luth Casino. This new statute led to restructuring of the prior casino agreements between the Band and the City under a 1994 consent decree issued by United States District Judge Paul A. Magnuson. Pursuant to this decree the Band paid the City $75 million in the period from 1994 through early 2009 amounting to 19 percent of gross revenues. The Band stopped making such payments in 2009 after concluding that they violated IGRA as interpreted by the National Indian Gaming Commission.

In July 2011, the Gaming Commission issued a Notice of Violation regarding the Fond du Luth Casino after determining that the Band's payments to the City violated IGRA requirements that tribes are to have the sole proprietary interest in casinos and are to be their primary beneficiaries. The Gaming Commission ordered the Band not to resume payments to the City or face fines and closure of the casino. Shortly thereafter the Band sought relief under Federal Rule of Civil Procedure 60(b)(6) from any obligation for similar payments in the period from 2009 to 2011. The district court denied relief in November 2011, and the Band appealed. We reversed in January 2013 and remanded for the district court to consider six factors relevant to the question of whether the Band was entitled to the relief it had requested. City of Duluth v. Fond du Lac Band of Lake Superior Chippewa, 702 F.3d 1147, 1155 (8th Cir. 2013). On remand the district court failed to consider all of the factors identified in our January 2013 order, and the Band appeals. We reverse and remand.

I.

The relevant facts underlying the issues in this case are discussed in detail in our most recent opinion in this case, City of Duluth, 702 F.3d at 1150-52, and we briefly summarize some of that history here. Although the casino was opened as a joint venture, in 1988 Congress passed IGRA which requires that Indian tribes have the "sole proprietary interest" in Indian gaming activity. 25 U.S.C. § 2710(b)(2)(A).

The Band then sought federal declaratory and injunctive relief in the District of Minnesota on the basis that its 1986 agreement with the City of Duluth did not comply with IGRA. The district court directed the Band to take this question to the National Indian Gaming Commission, the agency tasked by Congress with the responsibility to interpret and enforce IGRA. See 25 U.S.C. § 2706. In 1993, the Gaming Commission ruled that the 1986 casino agreement violated IGRA, but it allowed the parties to negotiate a new contract before beginning any enforcement action.

The agreement reached between the Band and the City in 1994 was subsequently approved by the Gaming Commission and then incorporated into the consent decree by the district court which retained jurisdiction over its enforcement. Although the Band owns the casino building and the land on which it is located is reservation land, the decree provided in relevant part that the Band would pay 19% of the casino's gross revenues to the City as "rent" from 1994 to 2011. A rental rate for the years 2011 to 2036 would be negotiated later. Such payments to the City had been characterized as "rent" in a sublease agreement. Before the casino opened in 1986 the Band leased it to a commission made up of representatives of the City and of the Band. The 1994 decree provided that this commission would sublease the casino to the Band and assign the rent payments to the City. The Band paid $75 million to the City in such rent from 1994 to 2009.

In accordance with a resolution passed by its governing body, the Band stopped making rent payments on August 6, 2009. Prior to that resolution the Gaming Commission had issued advisory letters stating that casino arrangements similar to that of the Band violated IGRA's sole proprietary interest rule. The City then responded by filing its breach of contract suit in the federal district court in September 2009. The Band answered that certain terms in the 1994 decree were invalid because they did not comply with IGRA provisions as interpreted by the Gaming Commission.

The Band also sought administrative review of the 1994 agreement by the Gaming Commission. On July 12, 2011 the Gaming Commission issued a Notice of Violation ("NOV") after concluding that the 1994 agreement violated IGRA because "[t]ribes, not third parties, are to possess the sole proprietary interest in and responsibility for the gaming activity and to be the primary beneficiaries of that activity." See 25 U.S.C. §§ 2710(b)(2)(A); 2702(2). The Commission ordered the Band to cease performance under the agreement with the City or face sanctions including fines and closure of the casino.

Subsequently the Band moved in the district court for Rule 60(b) relief from making past and future rent payments. In response the district court granted relief from making future payments but denied it for the payments withheld from 2009 through 2011. The Band appealed, and we reversed the denial of Rule 60(b) relief for the 2009 to 2011 payments. City of Duluth, 702 F.3d at 1155. We determined that the district court had abused its discretion "[t]o the extent [its] decision . . . relied on an assumption that retrospective relief" was not available under Rule 60(b)(6) for claims partially covered by Rule 60(b)(5). Id. A change in the law could "represent so significant an alteration in circumstances as to justify both prospective and retrospective relief from the obligations of a court order." Id. at 1154; see In re Pac. Far E. Lines, Inc., 889 F.2d 242 (9th Cir. 1989).

Our opinion specified several factors that the district court should consider on remand. Factors that might disfavor relief included the following:

> Both the Band and the City voluntarily agreed to the provisions incorporated in the 1994 decree. Moreover, this agreement was initially endorsed by the NIGC [Gaming Commission]. While the NIGC had the power to change its position, it does not have the authority to punish a party for obeying a court order.

City of Duluth, 702 F.3d at 1155.  We also noted "factors favoring relief to be considered" by the district court on remand:

> Congress vested in the NIGC authority for matters related to the regulation of Indian casinos, see 25 U.S.C. § 2706, **in order to ensure that the primary beneficiaries of Indian gaming operations are to be the tribes themselves**, see 25 U.S.C. § 2702(2).  By the time the Band began withholding rent in 2009, the City was on notice that the NIGC's views on the validity of the 1994 agreement might well have changed. . . .  The district court abused its discretion by not examining all the relevant factors including whether the NOV issued by the NIGC on July 12, 2011, changing its earlier position and ordering the Band to cease performance under the consent decree, was an "exceptional" occurrence justifying 60(b)(6) relief.

Id.  (emphasis added).

In sum, our opinion specified six factors for the district court to consider on remand: (1) the parties' voluntary agreement to the 1994 decree; (2) the Gaming Commission's initial endorsement of the 1994 agreement; (3) the Gaming Commission's lack of authority to punish a party for obeying a court order; (4) the congressional policy behind IGRA and the creation of the Gaming Commission, including Congress's express intent that tribes be the primary beneficiaries of Indian casinos; (5) that the City was on notice in 2009 of relevant changes in the Gaming Commission's views; and (6) that the July 12, 2011 NOV could be an "exceptional" occurrence justifying relief.

Before denying any relief under Rule 60(b)(6) on remand, the district court considered only five of the six factors we had identified in City of Duluth, 702 F.3d at 1155.  The Band appeals.

-5-

II.

We review the district court decision for abuse of discretion. <u>City of Duluth</u>, 702 F.3d at 1152. A district court abuses its discretion "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; or when all proper factors and no improper ones are considered, but the court commits a clear error of judgment in weighing those factors," or when the court makes an error of law. <u>Id.</u>

The Band argues that the district court failed to consider "a relevant factor that should have been given significant weight": that is, the intent of Congress "to ensure that the primary beneficiaries of Indian gaming operations are to be the tribes themselves." <u>City of Duluth</u>, 702 F.3d at 1155. We agree. The district court's memorandum opinion did not discuss this fundamental factor specified in our remand order.

IGRA explicitly defined the policies and goals which led to its enactment. Congress indicated that its intent upon passing IGRA was "to provide a statutory basis for the regulation of gaming by an Indian tribe adequate . . . to ensure that the Indian tribe is the primary beneficiary of the gaming operation." 25 U.S.C. § 2702(2). The Gaming Commission was created "to protect such gaming as a means of generating tribal revenue." 25 U.S.C. § 2702(3). The "primary beneficiary" rule arose from Congress's aim "to promote tribal economic development, tribal self-sufficiency, and strong tribal government" which is "a principal goal of Federal Indian policy." 25 U.S.C. §§ 2701(4), 2702(1). Congress has noted that for tribes, gaming income "often means the difference between an adequate governmental program and a skeletal program that is totally dependent on Federal funding." S. Rep. No. 100-446, at 3 (1988), reprinted in 1988 U.S.C.C.A.N. 3071, 3072.

-6-

This congressional policy underlying IGRA and the creation of the Gaming Commission are factors deserving significant weight in this case. Federal policy and interests are particularly important in consent decrees. "Consent decrees entered in federal court must be directed to protecting federal interests . . . [and] further[ing] the objectives of [federal] law." Frew v. Hawkins, 540 U.S. 431, 437 (2004). Such decrees must "be modified if . . . one or more of the obligations placed upon the parties has become impermissible under federal law." Rufo v. Inmates of the Suffolk Cnty. Jail, 502 U.S. 367, 388 (1992). Here, the Gaming Commission has determined that rent payments to the City violated the IGRA requirements that a tribe be the sole proprietor of a casino and also the primary beneficiary of gaming. Congress created the Gaming Commission and gave it authority over IGRA's interpretation and enforcement in order to protect such interests.

The City argues that congressional policy should not weigh strongly in the Band's favor because IGRA specifies that Indian gaming revenues may also "help fund operations of local government agencies," 25 U.S.C. § 2710(b)(2)(B)(v). The record here does not suggest that the "rent" provision in the 1994 decree was ever intended solely to cover the cost of any city services provided to the casino such as emergency calls. In its 2011 Notice of Violation letter, the Gaming Commission found that the "rent" paid to the City from gross revenues had amounted to between 26.6 and 33.5 percent of the casino's annual net profits. The record suggests that such a large percentage of casino profits would be grossly disproportionate to the cost of any city services for the casino. The record also indicates that property taxes (an ordinary source of funding for local government operations) would have been $180,930 in 2010 for a non Indian owner of such a casino property, far less than the $6 million of "rent" payments to the City for that year. The City has provided almost no evidence regarding the costs of any services to the casino, and at oral argument it admitted that it had never calculated these costs. The record does indicate, however, that the City has received substantial benefits from Indian gaming under the 1994 decree.

-7-

The district court abused its discretion on remand by failing to consider this congressional policy and its intent that tribes be the primary beneficiaries of Indian gaming.  This factor was identified in our previous remand order, and the record supports its significance in terms of the Band's request for Rule 60(b)(6) relief.

III.

We remand to the district court for its reconsideration of the Band's Rule 60(b)(6) motion and direct it to consider all of the factors outlined here and in our prior remand order.  Accordingly, the district court must give proper weight to the congressional intent that tribes be the primary beneficiaries of Indian gaming as well as other relevant factors we have previously identified.  These include the facts that the City was on notice in 2009 of relevant actions and policies of the Gaming Commission and its warning in the 2011 Notice of Violation that the tribe would violate IGRA by making further rent payments to the city.  As discussed in our prior City of Duluth opinion, such change in the governing law is also relevant to the question of whether an exceptional circumstance compels a grant of Rule 60(b)(6) relief.  City of Duluth, 702 F.3d at 1154-55; see In re Pac. Far E. Lines, Inc., 889 F.2d 242 (9th Cir. 1989).

For the reasons stated, we reverse and remand for the district court's reconsideration of the Band's Rule 60(b)(6) motion in accordance with this opinion and the relevant law cited.

_____